The next case is United States v. Anton Morrishow. Did I pronounce that correctly, Morrishow or Morrishow? Morrishow. Thank you. Attorney Habib, you have reserved two minutes for rebuttal. Thank you and may it please the court, Daniel Habib, Federal Defenders of New York on behalf of Anton Morrishow. A straightforward application of this court's decision in Jimenez resolves this appeal. Here, as in Jimenez, the district court imposed, without explanation, two onerous special conditions of supervised release. One concern of mine is that Judge Seibel read out the two special conditions at sentencing. She read them in full and then asked counsel, does either lawyer know of any legal reason why the sentence I've described should not be imposed? And so, and then both lawyers say, no, your honor. So it's a little hard pressed to now say that she got it wrong or that she messed up. I mean, she did a very careful job at the sentencing, going through all of the statutory factors. So we agree that plain error review applies to this claim. However, Jimenez arose in an identical posture. There, the conditions of... In Jimenez, the, I think it was Judge Cote? Yes. It wasn't proposed in the PSR, so it was kind of, as I recall, it was presented to the parties at sentencing. They didn't have time to think about it in advance. So it's a little bit, a little bit different, I think. Otherwise, I agree with you, very similar. To be precise, your honor, the community service condition was not proposed in the PSR in Jimenez. However, the search condition was proposed. That said, we have identified in our brief a number of cases recognizing, in a plain error posture or a relaxed plain error posture, violations of exactly the kind that necessitate remand here. The district court gave no explanation, made no individualized findings, and certainly made no findings specific to Mr. Mora show that these conditions were both reasonably related to the statutory factors and the least intrusive means necessary to advance the statutory objectives. Here, as to the electronic search condition, it's worth recognizing that as the Supreme Court has made clear on a number of occasions, the search of an individual's electronic devices works an extraordinary intrusion into his constitutional privacy interests. The search of a phone, the Supreme Court said 10 years ago in Riley, and it has become exponentially truer today, exposes the searcher to far more than the average search of a home, to the entirety of a person's digital life. I understand your argument on the search condition as far as the basis for it, that the government is relying on the fact that in the video footage, the defendant takes out his phone for a few seconds and looks at it before the events take place relating to the robbery or attempted robbery of the apartment. But as to the second condition, the community service, there were references in the record to the fact that he didn't do well, was in and out of jail when he was unemployed, that he needed structure in his life, which is why it was recommended by probation. And I know that you, one of your arguments is he may have to do more than 4,000 hours of community service if he's required to do 20 a week while he's on supervised release. But that event has not occurred. There were many layers. The court, in the standard conditions of probation, the first condition is you shall either seek full-time employment, be employed full-time or seek full-time employment or be in school, unless you're excused. So if he's excused from seeking employment by probation, he would never have to do the condition of community service of 20 hours a week, correct? That's true, Your Honor. And even if he did, if probation said you need structure, you need to do community service until you get a job, that doesn't mean that right now he's facing more than 4,000 hours of community service, correct? So how is that claim ripe? A couple of responses, Your Honor. First, I would note that the government made the identical argument in Jimenez itself, arguing that the claim was not ripe for just the reason Your Honor gave. And this court rejected that argument and remanded the condition. Second, the references in the record to structure, I don't think can be fairly read to authorize or invite the imposition of a condition of community service of this magnitude. So the teaching of Parkins is not that a district court can't impose a substantial amount of community service. It can. However, the guidelines presumptively cap the aggregate amount of service. This is very interesting to me. When you look at the guidelines, application no. 1 of section 5F1.3 says community service which on which Parkins latches on to this 400 hours. You know what it's for? It's because community service generally should not be imposed in excess of 400 hours. Longer terms of community service impose heavy administrative burdens. It's nothing to do with in some way that it's affecting the person serving the community service. This is a reduction in paperwork for the Department of Probation, for Lord's sakes. So, I mean, Parkins says what it says, but I'm hard-pressed to see this as some kind of ceiling based on, quote, heavy administrative burdens. I mean, what's the logic of that? Someone gets into trouble when they're not working or in school. Makes some sense to me. So a federal court should say, oh, you can't have more than 400 hours during a lifetime of supervised release because it does, it puts too much of a burden on probation. And so therefore, after you've done your 400 hours, if you're sitting on the street for 20 hours a week, that's okay. Does that make any sense? So a few responses, Your Honor. First, with respect, and I know Your Honor knows this, the holding of Parkins is that the 400-hour cap is the presumptive cap. In addition, at pages 67 to 68 of the decision, Parkins... Well, maybe it's a presumptive cap, but that district court judges, when they have reason to think that perhaps an engagement in community service and or employment or school is correlated to a particular individual's difficulty, that the courts, that they're not bound by that. Absolutely, but in this case, no explanation why. Recognize the fact that the cap is, quote, as a result of a heavy administrative burden. May I address that, Your Honor? I do want to note that at pages 67 to 68 of the decision, Parkins addresses this point. Parkins, because the government Parkins had made the same argument, that as long as there was no administrative burden, the cap could be disregarded. Citing this Court's decision in Sash, Parkins said that the second sentence, that is the one addressed to heavy administrative burdens, quote, does not qualify the first, but provides background information. This Court specifically held the second sentence, that which refers to heavy administrative burdens, quote, does not invite district courts to impose more than 400 hours of community service based on a finding that a heavy administrative burden is unlikely. So, I take Your Honor's point, but with respect, it's squarely addressed in Parkins. If it turns out that 20 hours a week while unemployed does, is a burden on Mr. Morshaw, could he not go back to the district judge and make an application to reduce it? He could, but that's true in every case where there's been a challenge to a supervised release condition. I think what's critical here is that this Court's precedents, and in particular the recent decision in Sims, has made clear that there are procedural requirements attendant to the imposition of supervised release conditions that impinge on constitutional rights. Does it matter why the community service is ordered? Because sometimes community service is ordered as part of the community service of the sentence for punishment, meaning, you know, you're going to serve some time or you're going to be on supervised release, and while you're on supervised release, you're going to pay a debt to society. And your debt to society is community service. That doesn't appear to be what the Court's doing here. The Court is doing, ordering community service more for rehabilitation purposes, to keep them out of trouble and out of jail. Does that make a difference? In other words, the 400-hour cap may have been intended to say, look, if you're going to order community service beyond the administrative task of the paperwork, is you should not, because the Court can go beyond it, right? If the Court gives reasons, the Court can go above the 400. It's not an absolute max. It's not. And that's really the key point. So my question is, if it's not an absolute max and it's 400 hours, is it because if it's being ordered as a way to pay back your debt to society that there should be some sort of cap, which doesn't appear to be the case here? So we don't know why the District Court imposed this community service condition, because the Court didn't explain it. And on remand, Judge Wesley, the District Court could explain it, including, if the Court believes it appropriate, an explanation of why the cap had been exceeded. But to respond to your question, Judge Kahn, I think it would be procedural error to impose a community service condition to punish. And that's because the need to provide just punishment for the offense is a factor listed in Section 3553A2A, which is not among the permissible factors that can be considered in setting a condition of supervised release. That said, it absolutely does matter, and that's why the remedy we've asked for is remand for the District Court to tell us what purpose it had in mind when it imposed this term. Thank you. You have reserved two minutes for rebuttal. Is it Attorney Long? Yes, Your Honor. Good morning, Your Honors. My name is Timothy Lai. I'm an Assistant U.S. Attorney. I'm representing the government on this appeal, and I was counsel in the District Court. I'd like to address one point that an appellant made regarding Jimenez. There is one really crucial difference that he has not highlighted, and it's that in Jimenez, the reasoning constituting the justification for both the sentencing and the conditions of supervised release totaled nine lines of the transcript, basically a third of a page. And they were somewhat perfunctory. They were things like need for deterrence, need for protecting the public, that type of thing. Judge Seibel did something completely different. She did five pages, 120 lines of thorough reasoning for both the judgment as a whole and for the conditions of supervised release. Did she specifically provide findings on why she was imposing the two special conditions? So Judge Seibel didn't use, let's say, magic words like deterrence, therefore needs this particular condition of supervised release. But under Betz, that's not required if it's evident under the record the reasoning for the conditions of supervised release. So what was her reasoning for each of the conditions? Sure, Your Honor. So let's start with the search condition. Judge Seibel went into detail about the offense conduct, which involved the defendant shooting into an occupied basement apartment in broad daylight while, before children and families were walking. Well, she goes into great lengths in describing the shooting and how bad it was. But is there anything that would suggest that the search of an electronic device was necessary? Yes, Your Honor. Two things. And I know that one of them is a little bit smaller. It's the fact that the defendant used the device briefly in the middle of committing the crime. I would note that even the use of a device... But every drug, I mean, self-puts are ubiquitous. One need only ride on the Ford train to discover that. So, I mean, they occur in every crime. There are always cell phone calls between purchasers and sellers. There are cell phone calls between lookouts and the stash house, the sale house. I mean, so this now says anytime a cell phone is used, that the monitoring of the electronic device becomes part of the terms and conditions of probation. Not quite, Your Honor. That analysis is part of determining whether the search condition, particularly of electronics, is appropriate. But there's a second part, and that's will the search condition help deter or help further the 3553A factors, whether that's deterrence or protecting the public. But it also empowers the probation officer then to take a look at the cell phone many times without reasonable cause, doesn't it? Well, with at least reasonable suspicion is required, Your Honor. Right. It lowers the bar. That's correct, Your Honor. But it's certainly the fact that on supervised release, and the court has stated as much, defendants have lower expectations of privacy. What about the other electronic devices that are also covered by the term? It's not just a cell phone, is it? No. You're correct, Your Honor. So what was it in his behavior that brought into play any kind of a laptop or an iPad or anything else like that? Well, Your Honor, I think it's reasonable suspicion to search the particular device that might have indications of criminal or violations. Well, what was it in his conduct that reflected that that played a role with regard to his criminal behavior? Well, two things. One is that there were accomplices involved, and under Thomas, that was the justification for affirming the search condition. The second part is that even by sending a message or doing some type of using the device, that can convey information about location. And that information may be relevant to determining where the defendant was at a particular time. But I'm still stuck on the use. There's footage. He's in the hallway, and he takes out his phone for a few seconds. For all we know, it could have been his girlfriend texting him. I mean, how many times do we take out a phone? How do we know he didn't take out his phone to look at the time? How does that make that few seconds where he takes out his phone and looks at it, puts it back in his pocket, there's no indication he's typing on it, some kind of message, hey, we're here, or how is that use for that offense? That's what I'm struggling with, counsel. Your Honor, that's, I take your point. I would note that, again, two points. Even, let's take your Honor's point and say, wasn't using particularly for furthering the crime. There is still a justification for the search condition, because it goes towards deterrence and towards protecting the public. But then that gets to Judge Wesley's point, which is basically, any time you commit an offense, your devices are now going to be searched, because everyone has a phone. I mean, unless you live under a rock, you have a cell phone, and presumably a laptop or a computer. So, aren't you broadening that? Well, not so, Your Honor. What Judge Sidebell did was create a record of the exact factors that required, that justified the search conditions. And not all defendants who come before a district court will have met those factors. What would inform us, then, exactly what the factors were that she considered? Yes, Your Honor. I mentioned before, describing the offense conduct itself, the fact that he had a two-year sentence before, and therefore was not deterred, despite having committed attempted robbery at that time. The fact that he had a history of committing violent robberies. Her words, he had made something of a career committing robberies. And I think there's one other thing that she mentioned, which portends what the defendant might do in the future. It's what was found in his apartment during a protective sweep. A bulletproof vest, ammunition, two different calibers, indicating access to two different... I mean, that's all evidence that he might commit crimes again. It doesn't necessarily tie into the electronic device. Before you run out of time, the community service, I mean, how do we square this with Jimenez, Parkins? I mean, there are some differences, but there's no cap here. How do you deal with that? Well, I think Parkins' clear example is that that condition of community service was imposed on top of work. So, it can be seen that that burden would have been... No, it's different, but Parkins says, in general, over the lifetime of the supervised release, not annually, there should be no more than 400 hours of community service. And here, there's no cap. And why should there be a deviation from the general rule? Well, with respect to this instance, again, the cap is maybe presumptive, but the district court can provide reasons. And the district court here, Judge Seibel, has provided those reasons. Did she say, I don't think the cap of 400 applies here because of the following circumstances and identify them? She did not, Your Honor. She did not. So, are we to infer from what she said? And again, she did a very careful job, but are we supposed to infer that she thought about the 400-hour cap and decided it was not warranted because of specific circumstances? And I suppose, what's the harm in sending it back and letting her spell out what she might be thinking? Sure, Your Honor. What I would say about that is, if the defendant felt that it was a burden, and let me add this, in the reply brief, the defendant indicated that child care, he had possibly child care issues that might be a burden on top of doing community service. I've spoken with multiple probation officers, and they've indicated that if child care is a burden and the partner is working and making money, that that may be a reason to excuse the person from working, for the working requirement. That gets to the issue of rightness. Is this issue right for us to address now? Because of the different layers of, he could be excused from full employment, he could be excused from the community service, both. It's really up to probation. So he may never have to serve any community service at all. That's exactly right, Your Honor. He might get a job. He might get a job, that's right. So can you address the rightness issue? Your opponent seemed to suggest that that issue's been resolved by the circuit. I don't think that's quite correct. In Jimenez, they were kicking it down to the district court because of the issue that there were only nine lines of explanation. They were already going to go ahead and deal with that. Might as well deal with the 400 hours as well. We're not in that same posture here. If we kick this down to Judge Seibel, she would add a few magical words, like we are imposing these conditions because of deterrence, because of protecting the public, because of rehabilitation. Maybe that's it. And then that would be it. She might also say up to but no more than 400 hours total. That's correct, Your Honor. And if the defendant felt like he was reaching those 400 hours, he could then go to the court to Judge Seibel and say, look, it is a burden, 400 hours cap. He could raise the issue then. He never raised it below. And on plain error review, counsel has not met that high burden of proving that. Thank you, Your Honor. Seeing no further questions, thank you. Attorney Habib, you have reserved two minutes for rebuttal. Thank you. I'm pretty confident that if defense counsel had said, Your Honor, there's a 400-hour cap in general, that Judge Seibel would have specifically addressed it and maybe modified it so that there was a cap. So, you know, it's in the situation where it wasn't raised, there was an opportunity to raise it, and should we go ahead and remand it or should we leave it up to the defendant to raise it if the issue arises? I think, Your Honor, this court should vacate and remand for resentencing so that we can find out what Judge Seibel would say rather than posit, as the government has done in its brief, what she might say to justify the condition. Indeed, it could be that circumstances have changed since the time of Mr. Marsh's original sentencing, such that no... No, I understand that, but it's like in my mind is should the burden be on the defendant who didn't raise the issue before, so let him raise it now if it comes up? So what I would say, Your Honor, is this. We accept that relaxed plain error review applies. This court has said that in the sentencing context... I'm not sure the relaxed plain error review applies because he had an opportunity to object. So for the proposition... For the proposition that relaxed plain error review applies, I would cite Haverkamp, which reviews a condition which had been recommended in the PSR, nonetheless cites, for example, Gomez for the proposition that in a plain error posture, a sentencing remand should be afforded somewhat more liberally. But under either standard of plain error review, we prevail. We've collected a number of cases in our briefing vacating and remanding supervised release conditions, notwithstanding a failure to... We've had a lot of these supervised release cases in the last few years. We have, Your Honor, and I think it's a function of a couple of things, and primarily it's a function of this Court's growing recognition that supervised release conditions impose substantial burdens on supervisees In Sims, this Court said that they have, quote, life-altering effects on defendants, their families, and their communities. Whether Mr. Moore shows entire digital life is exposed to scrutiny for a three-year term of supervision has a significant impact on his constitutional privacy interests. Whether he performs 3,000 hours of uncompensated labor has a significant impact on his constitutionally protected liberty interests. And so with respect, I don't think it's asking too much for the District Court to comply with the procedures that this Court has set are requisite for imposing such conditions. Thank you, Your Honors. Thank you, Counsel. And that... We will take the Court will reserve decision. That concludes our arguments for today, so I'll ask our courtroom deputy...